**D. Clifford CRUMMEY et al., Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**Nos. 21607, 21607–A.**

United States Court of Appeals Ninth Circuit.

June 25, 1968.

Wareham C. Seaman (argued), Alvin R. Wohl, John B. Cinnamon, of Seaman, Couper & Wohl, Sacramento, Cal., for appellant.

Stuart A. Smith (argued), Meyer Rothwacks, David O. Walter, Attys., Dept. of Justice, Harry Marselli, Atty., Tax Division, Dept. of Justice, Mitchell Rogovin, Asst. Atty. Gen., Tax Division, Richard C. Pugh, Acting Asst. Atty. Gen., Lester Uretz, Chief Counsel, Internal Revenue Service, Washington, D. C., for appellees.

Before BROWNING and DUNIWAY, Circuit Judges, and BYRNE*, District Judge.

BYRNE, District Judge:

This case involves cross petitions for review of decisions of the Tax Court of the United States. Jurisdiction in the Tax Court was based upon 26 U.S.C. § 7442. Jurisdiction in this court is based upon 26 U.S.C. §§ 7482 and 7483.

On February 12, 1962, the petitioners executed, as grantors, an irrevocable living trust for the benefit of their four children. The beneficiaries and their ages at relevant times are as follows:

| | Age | 12/31/62 | 12/31/63 |
|---|---|---|---|
| John Knowles Crummey | | 22 | 23 |
| Janet Sheldon Crummey | | 20 | 21 |
| David Clarke Crummey | | 15 | 16 |
| Mark Clifford Crummey | | 11 | 12 |

Originally the sum of $50 was contributed to the trust. Thereafter, additional contributions were made by each of the petitioners in the follow-

---

\* Hon. William M. Byrne, Senior District Judge, Central District of California, sitting by designation.

ing amounts and on the following dates:

| | |
|---|---|
| $ 4,267.77 | 6/20/62 |
| 49,550.00 | 12/15/62 |
| 12,797.81 | 12/19/63 |

The dispute revolves around the tax years of 1962 and 1963. Each of the petitioners filed a gift tax return for each year. Each petitioner claimed a $3,000 per beneficiary tax exclusion under the provisions of 26 U.S.C. § 2503(b). The total claimed exclusions were as follows:

| | | |
|---|---|---|
| D. C. Crummey | 1962—$12,000 | 1963—$12,000 |
| E. E. Crummey | 1962—$12,000 | 1963—$12,000 |

The Commissioner of Internal Revenue determined that each of the petitioners was entitled to only one $3,000 exclusion for each year. This determination was based upon the Commissioner's belief that the portion of the gifts in trust for the children under the age of 21 were "future interests" which are disallowed under § 2503(b). The taxpayers contested the determination of a deficiency in the Tax Court. The Commissioner conceded by stipulation in that proceeding that each petitioner was entitled to an additional $3,000 exclusion for the year 1963 by reason of Janet Crummey having reached the age of 21.

The Tax Court followed the Commissioner's interpretation as to gifts in trust to David and Mark, but determined that the 1962 gift in trust to Janet qualified as a gift of a present interest because of certain additional rights accorded to persons 18 and over by California law. Thus, the Tax Court held that each petitioner was entitled to an additional $3,000 exclusion for the year 1962.

The key provision of the trust agreement is the "demand" provision which states:

"THREE. *Additions.* The Trustee may receive any other real or personal property from the Trustors (or either of them) or from any other person or persons, by lifetime gift, under a Will or Trust or from any other source. Such property will be held by the Trustee subject to the terms of this Agreement. A donor may designate or allocate all of his gift to one or more Trusts, or in stated amounts to different Trusts. If the donor does not specifically designate what amount of his gift is to augment each Trust, the Trustee shall divide such gift equally between the Trusts then existing, established by this Agreement. The Trustee agrees, if he accepts such additions, to hold and manage such additions in trust for the uses and in the manner set forth herein. *With respect to such additions, each child of the Trustors may demand at any time (up to and including December 31 of the year in which a transfer to his or her Trust has been made) the sum of Four Thousand Dollars ($4,000.00) or the amount of the transfer from each donor, whichever is less, payable in cash immediately upon receipt by the Trustee of the demand in writing and in any event, not later than December 31 in the year in which such transfer was made. Such payment shall be made from the gift of that donor for that year. If a child is a minor at the time of such gift of that donor for that year, or fails in legal capacity for any reason, the child's guardian may make such demand on behalf of the child. The property received pursuant to the demand shall be held by the guardian for the benefit and use of the child."* (emphasis supplied)

The whole question on this appeal is whether or not a present interest was given by the petitioners to their minor children so as to qualify as an exclusion

under § 2503(b)[1] The petitioners on appeal contend that each minor beneficiary has the right under California law to demand partial distribution from the Trustee. In the alternative they urge that a parent as natural guardian of the person of his minor children could make such a demand. As a third alternative, they assert that under California law a minor over the age of 14 has the right to have a legal guardian appointed who can make the necessary demand. The Commissioner, as cross petitioner, alleges as error the Tax Court's ruling that the 1962 gifts in trust to Janet (then age 20) were present interests.

It was stipulated before the Tax Court in regard to the trust and the parties thereto that at all times relevant all the minor children lived with the petitioners and no legal guardian had been appointed for them. In addition, it was agreed that all the *children* were supported by petitioners and none of them had made a demand against the trust funds or received any distribution from them.

The tax regulations define a "future interest" for the purposes of § 2503(b) as follows:

"'Future interests' is a legal term, and includes reversions, remainder, and other interests or estates, whether vested or contingent, and whether or not supported by a particular interest or estate, which are limited to commence in use, possession or enjoyment at some future date or time." Treasury Regulations of Gift Tax, § 25.-2503–3.

This definition has been adopted by the Supreme Court. Fondren v. Commissioner of Internal Revenue, 324 U.S. 18, 65 S.Ct. 499, 89 L.Ed. 668 (1945); Commissioner of Internal Revenue v. Disston, 325 U.S. 442, 65 S.Ct. 1328, 89 L.Ed. 1720 (1945). In Fondren the court stated that the important question is when enjoyment begins. There the court held that gifts to an irrevocable trust for the grantor's minor grandchildren were "future interests" where income was to be accumulated and the corpus and the accumulations were not to be paid until designated times commencing with each grandchild's 25th birthday. The trustee was authorized to spend the income or invade the corpus during the minority of the beneficiaries only if need were shown. The facts demonstrated that need had not occurred and was not likely to occur.

Neither of the parties nor the Tax Court has any disagreement with the above summarization of the basic tests. The dispute comes in attempting to narrow the definition of a future interest down to a more specific and useful form.

The Commissioner and the Tax Court both placed primary reliance on the case of Stifel. v. Commissioner of Internal Revenue, 197 F.2d 107 (2nd Cir. 1952). In that case an irrevocable trust was involved which provided that the beneficiary, a minor, could demand any part of the funds not expended by the Trustee and, subject to such demand, the Trustee was to accumulate. The trust also provided that it could be terminated by the beneficiary or by her guardian during minority. The court held that gifts to this trust were gifts of "future interests". They relied upon *Fondren* for the proposition that they could look at circumstances as well as the trust agreement and under such circumstances it was clear that the minor could not make the demand and that no guardian had ever been appointed who could make such a demand.

The leading case relied upon by the petitioners is Kieckhefer v. Commissioner of Internal Revenue, 189 F.2d 118 (7th Cir. 1951). In that case the donor

---

1. 26 U.S.C. § 2503(b) provides in part: "Exclusions From Gifts.—In the case of gifts (other than gifts of future interest in property) made to any person by the donor during the calendar year 1955 and subsequent calendar years, the first $3000 of such gifts to such person shall not, for the purpose of subsection (a), be included in the total amount of gifts made during such year. * * * *"

set up a trust with his newly born grandson as the beneficiary. The trustee was to hold the funds unless the beneficiary or his legally appointed guardian demanded that the trust be terminated. The Commissioner urged that the grandson could not effectively make such a demand and that no guardian had been appointed. The court disregarded these factors and held that where any restrictions on use were caused by disabilities of a minor rather than by the terms of the trust, the gift was a "present interest". The court further stated that the important thing was the right to enjoy rather than the actual enjoyment of the property.

The *Kieckhefer* case has been followed in several decisions. In Gilmore v. Commissioner of Internal Revenue, 213 F.2d 520 (6th Cir. 1954) there was an irrevocable trust for minors. It provided that all principal and accumulated income would be paid on demand of the beneficiary. The trust was to terminate on the beneficiary's death. Anything remaining in the trust at the time of death would go to the beneficiary's estate.

The Tax Court stated that the demand provision would have made the advancements "present interests" but for spendthrift provisions and the authority of the Trustee to invest in non-income producing properties. The Circuit agreed that the demand provision made the advancements "present interests" and further held that the other provisions did not change that character. Reliance was placed on the "right to enjoy" language of *Kieckhefer*.

In United States v. Baker, 236 F.2d 317 (4th Cir. 1956) the court followed the *Kieckhefer* case in holding that advances were "present interests" where:

"The trust agreements with which we are concerned here created no barriers to the present enjoyment by the infants of the trust property beyond those which are established by the laws of North Carolina."

That case involved a trust for minors where income and principal were to be used for the support, education and benefit of the beneficiaries according to the discretion of the trustee who was to act as if he were a guardian. What was not expended went to the beneficiary on his 21st birthday.

A final case of interest is Trust No. 3 v. Commissioner, 285 F.2d 102 (7th Cir. 1960). This involved the question of whether certain income was taxable to a trust or to the beneficiaries. The court held the income was taxable to the beneficiaries where they had the right to terminate the trust or take any part of it on demand. The beneficiaries were minors, and no guardian had been appointed. The Commissioner urged that no one was ever qualified to make the demand and thus that the beneficiaries could not have taken any property from the trust in the tax year. The court relying on *Kieckehefer* said:

"This distinction is unconvincing in view of the fact that the appointment of a guardian for a minor under a state law is a matter of routine in which the federal government has no concern."

Although there are certainly factual distinctions between the *Stifel* and *Kieckhefer* cases, it seems clear that the two courts took opposing positions on the way the problem of defining "future interests" should be resolved. As we read the *Stifel* case, it says that the court should look at the trust instrument, the law as to minors, and the financial and other circumstances of the parties. From this examination it is up to the court to determine whether it is likely that the minor beneficiary is to receive any present enjoyment of the property. If it is not likely, then the gift is a "future interest". At the other extreme is the holding in *Kieckhefer* which says that a gift to a minor is not a "future interest" if the only reason for a delay in enjoyment is the minority status of the donee and his consequent disabilities. The *Kieckhefer* court noted that under the terms there present, a gift to an adult would have qualified for the exclusion and they refused to discriminate

against a minor. The court equated a present interest with a present right to possess, use or enjoy. The facts of the case and the court's reasoning, however, indicate that it was really equating a present interest with a present right to possess, use or enjoy except for the fact that the beneficiary was a minor. In between these two positions there is a third possibility. That possibility is that the court should determine whether the donee is legally and technically capable of immediately enjoying the property. Basically this is the test relied on by the petitioners. Under this theory, the question would be whether the donee could possibly gain immediate enjoyment and the emphasis would be on the trust instrument and the laws of the jurisdiction as to minors. It was primarily on this basis that the Tax Court decided the present case, although some examination of surrounding circumstances was apparently made. This theory appears to be the basis of the decision in George W. Perkins, 27 T.C. 601 (1956). There the Tax Court stated that where the parents were capable of making the demand and there was no showing that the demand could be resisted, the gift was of a present interest. This approach also seems to be the basis of the "right to enjoy" language in both *Kieckhefer* and *Gilmore.*

Under the provisions of this trust the income is to be accumulated and added to the corpus until each minor reaches the age of 21, unless the trustee feels in his discretion that distributions should be made to a needy beneficiary. From 21 to 35 all income is distributed to the beneficiary. After 35 the trustee again has discretion as to both income and corpus, and may distribute whatever is necessary up to the whole thereof. Aside from the actions of the trustee, the only way any beneficiary may get at the property is through the "demand" provision, quoted above.

One question raised in these proceedings is whether or not the trust prohibits a minor child from making a demand on the yearly additions to the trust. The key language from paragraph three is as follows:

"If a child is a minor at the time of such gift of that donor for that year, or fails in legal capacity for any reason, the child's guardian may make such demand on behalf of the child."

The Tax Court interpreted this provision in favor of the taxpayers by saying that "may" is permissive and thus that the minor child can make the demand if allowed by law, or, if not permitted by law, the guardian may do it. Although, as the Commissioner suggests, this strains the language somewhat, it does seem consistent with the obvious intent in drafting this provision. Surely, this provision was intended to give the minor beneficiary the broadest demand power available so that the gift tax exclusion would be applicable.

There is very little dispute between the parties as to the rights and disabilities of a minor accorded by the California statutes and cases. The problem comes in attempting to ascertain from these rights and disabilities the answer to the question of whether a minor may make a demand upon the trustee for a portion of the trust as provided in the trust instrument.

It is agreed that a minor in California may own property. Estate of Yano, 188 Cal. 645, 206 P. 995 (1922). He may receive a gift. DeLevillain v. Evans, 39 Cal. 120. A minor may demand his own funds from a bank (Cal.Fin.Code, §§ 850 & 853), a savings institution (Cal.Fin. Code, §§ 7600 & 7606), or a corporation (Cal.Corp.Code, §§ 2221 & 2413). A minor of the age of 14 or over has the right to secure the appointment of a guardian and one will be appointed if the court finds it "necessary or convenient". Cal.Prob.Code, § 1406; Guardianship of Kentera, 41 Cal.2d 639, 262 P.2d 317 (1953).

It is further agreed that a minor cannot sue in his own name (Cal.Civ.Code,

§ 42) and cannot appoint an agent. (Cal. Civ.Code, § 33). With certain exceptions a minor can disaffirm contracts made by him during his minority. Cal.Civ.Code, § 35. A minor under the age of 18 cannot make contracts relating to real property or personal property not in his possession or control. Cal.Civ.Code, § 33.

The parent of a child may be its natural guardian, but such a guardianship is of the person of the child and not of his estate. Kendall v. Miller, 9 Cal. 591; Cal.Civ.Code, § 202.

After examining the same rights and disabilities, the petitioners, the Commissioner, and the Tax Court each arrived at a different solution to our problem. The Tax Court concentrated on the disabilities and concluded that David and Mark could not make an effective demand because they could not sue in their own name, nor appoint an agent and could disaffirm contracts. The court, however, concluded that Janet could make an effective demand because Cal.Civ.Code, § 33 indirectly states that she could make contracts with regard to real and personal property.

The Commissioner concentrated on the inability to sue or appoint an agent and concluded that none of the minors had anything more than paper rights because he or she lacked the capacity to enforce the demand.

The petitioners urge that the right to acquire and hold property is the key. In the alternative they argue that the parent as a natural guardian could make the demand although it would be necessary to appoint a legal guardian to receive the property. Finally, they urge that all the minors over 14 could make a demand since they could request the appointment of a legal guardian.

The position taken by the Tax Court seems clearly untenable. The distinction drawn between David and Mark on the one hand, and Janet on the other, makes no sense. The mere fact that Janet can make certain additional contracts does not have any relevance to the question of whether she is capable of making an effective demand upon the trustee. We cannot agree with the position of the Commissioner because we do not feel that a lawsuit or the appointment of an agent is a necessary prelude to the making of a demand upon the trustee. As we visualize the hypothetical situation, the child would inform the trustee that he demanded his share of the additions up to $4,000. The trustee would petition the court for the appointment of a legal guardian and then turn the funds over to the guardian. It would also seem possible for the parent to make the demand as natural guardian. This would involve the acquisition of property for the child rather than the management of the property. It would then be necessary for a legal guardian to be appointed to take charge of the funds. The only time when the disability to sue would come into play, would be if the trustee disregarded the demand and committed a breach of trust. That would not, however, vitiate the demand.

All this is admittedly speculative since it is highly unlikely that a demand will ever be made or that if one is made, it would be made in this fashion. However, as a technical matter, we think a minor could make the demand.

Given the trust, the California law, and the circumstances in our case, it can be seen that very different results may well be achieved, depending upon the test used. Under a strict interpretation of the *Stifel* test of examining everything and determining whether there is any likelihood of present enjoyment, the gifts to minors in our case would seem to be "future interests". Although under our interpretation neither the trust nor the law technically forbid a demand by the minor, the practical difficulties of a child going through the procedures seem substantial. In addition, the surrounding facts indicate the children were well cared for and

the obvious intention of the trustors was to create a long term trust. No guardian had been appointed and, except for the tax difficulties, probably never would be appointed. As a practical matter, it is likely that some, if not all, of the beneficiaries did not even know that they had any right to demand funds from the trust. They probably did not know when contributions were made to the trust or in what amounts. Even had they known, the substantial contributions were made toward the end of the year so that the time to make a demand was severely limited. Nobody had made a demand under the provision, and no distributions had been made. We think it unlikely that any demand ever would have been made.

All exclusions should be allowed under the *Perkins* test or the "right to enjoy" test in *Gilmore*. Under *Perkins*, all that is necessary is to find that the demand could not be resisted. We interpret that to mean legally resisted and, going on that basis, we do not think the trustee would have any choice but to have a guardian appointed to take the property demanded.

Under the general language of *Kieckhefer* which talked of the "right to enjoy", all exclusions in our case would seem to be allowable. The broader *Kieckhefer* rule which we have discussed is inapplicable on the facts of this case. That rule, as we interpret it, is that postponed enjoyment is not equivalent to a "future interest" if the postponement is solely caused by the minority of the beneficiary. In *Kieckhefer*, the income was accumulated and added to the corpus until the beneficiary reached the age of 21. At that time everything was to be turned over to him. This is all that happened unless a demand was made. In our case, on the contrary, if no demand is made in any particular year, the additions are forever removed from the uncontrolled reach of the beneficiary since, with the exception of the yearly demand provision, the only way the corpus can ever be tapped by a beneficiary, is through a distribution at the discretion of the trustee.

We decline to follow a strict reading of the *Stifel* case in our situation because we feel that the solution suggested by that case is inconsistent and unfair. It becomes arbitrary for the I.R.S. to step in and decide who is likely to make an effective demand. Under the circumstances suggested in our case, it is doubtful that any demands will be made against the trust—yet the Commissioner always allowed the exclusion as to adult beneficiaries. There is nothing to indicate that it is any more likely that John will demand funds than that any other beneficiary will do so. The only distinction is that it might be easier for him to make such a demand. Since we conclude that the demand can be made by the others, it follows that the exclusion should also apply to them. In another case we might follow the broader *Kieckhefer* rule, since it seems least arbitrary and establishes a clear standard. However, if the minors have no way of making the demand in our case, then there is more than just a postponement involved, since John could demand his share of yearly additions while the others would never have the opportunity at their shares of those additions but would be limited to taking part of any additions added subsquent to their 21st birthdays.

We conclude that the result under the *Perkins* or "right to enjoy" tests is preferable in our case. The petitioners should be allowed all of the exclusions claimed for the two year period.

The decision of the Tax Court denying the taxpayers' exclusions on the gifts to David and Mark Crummey is reversed. The decision of the Tax Court allowing the taxpayers' exclusions on the 1962 gift to Janet Crummey is affirmed.